| |
|---|
| **Dato v New York City Tr. Auth.** |
| 2024 NY Slip Op 33886(U) |
| October 30, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 158910/2019 |
| Judge: Richard Tsai |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | |
|---|---|---|
| **PRESENT:** | **HON. RICHARD TSAI** | **PART** 21 |
| | *Justice* | |

-------------------------------------------------------------------------X

ROSARIO DATO,

Plaintiff,

- v -

NEW YORK CITY TRANSIT AUTHORITY, ECCO III LLC,
E.C.C.O. III ENTERPRISES, INC., MTA CAPITAL
CONSTRUCTION COMPANY, MTA CAPITAL
CONSTRUCTION, METROPOLITAN TRANSPORTATION
AUTHORITY, CITY OF NEW YORK and VERDE ELECTRIC
CORP.,

Defendants.

-------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 158910/2019 |
| **MOTION DATE** | 03/15/2024 |
| **MOTION SEQ. NO.** | 004 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document numbers (Motion 004) 119-168, 174
were read on this motion to/for _____ORDER OF PROTECTION_____.

In this action for personal injuries, defendant Verde Electric Corp. (Verde) moves for an order:

(a) pursuant to CPLR 3103 "staying the filing of the Note of Issue and Certificate of Readiness until all discovery is completed";

(b) extending the discovery end date and deadline of March 19, 2024 to July 19, 2024 to permit time to complete discovery;

(c) pursuant to CPLR 3126, striking plaintiff's and third-party Miller Druck Specialty Contracting, Inc.'s (Miller Druck) pleadings for failure to comply with discovery;

(d) pursuant to CPLR 3124, compelling plaintiff and Miller Druck to provide outstanding discovery.

Verde has subsequently withdrawn the portion of its motion seeking the dismissal of plaintiff's pleadings (NYSCEF Doc. No. 145). After a motion conference on June 6, 2024, the branch of Verde's motion seeking to strike Miller Druck's pleadings has been resolved pursuant to a stipulation as between Verde and Miller Druck (NYSCEF Doc. No. 174).

Plaintiff opposes the remainder of Verde's motion, "other than the IME by Dr. Olsewski" (affirmation in opposition [NYSCEF Doc. No. 147] at 28-29).

**158910/2019   DATO, ROSARIO vs. NEW YORK CITY TRANSIT**
**Motion No.  004**

**Page 1 of 15**

The parties disagree whether plaintiff must provide authorizations for the release of certain medical and insurance records, access to social media, and copies of plaintiff's tax returns.

## BACKGROUND

In this action, plaintiff alleges that, on October 13, 2018:

"in the course of his employment as a tile setter for Miller Druck Specialty Contracting . . . on a project involving the renovation of the New York City Transit Authority Subway Station located at Central Park West and West 88th Street . . . while applying cement to the wall as part of tiling it, he was struck by an unsecured ladder, left leaning against scaffolding being used by the electrical subcontractor on the worksite, Verde Electric Corp. . . . the base of which was several feet higher than the level on which plaintiff was working, which tipped over and fell, striking the plaintiff and causing him to fall down onto his left knee on the staircase landing and sustain serious injuries"

(Verde's exhibit B in support of motion [NYSCEF Doc. No. 123], bill of particulars ¶¶ 4, 7).

As a result of the accident, plaintiff claims to have sustained the following injuries:

"(a) Tears of the Supraspinatus Tendon and Infraspinatus Tendon, right shoulder confirmed by MRI performed November 16, 2018;

(b) Labral tears and partial rotator cuff tears, right shoulder confirmed by arthroscopic surgery performed March 7, 2019;

(c) The foregoing right shoulder injuries required plaintiff to undergo right shoulder arthroscopy with subacromial decompression, acromioplasty, extensive debridement of the glenohumeral joint, and major synovectomy, glenohumeral joint, performed March 7, 2019, by Joseph Giovinazzo, M.D. at Metropolitan Surgical Institute;

(d) Medial meniscal tear, sprain of the medial collateral ligament, lateral patellar subluxation, medial patellar condromalacia, left knee confirmed by MRI performed November 16, 2018;

(e) The foregoing left knee injuries required plaintiff to undergo left knee arthroscopy, partial medial meniscectomy, chondroplasty of the troclea, plica excision and extensive synovectomy performed April 12, 2019, by Joseph Giovinazzo, M.D. at Metropolitan Surgical Institute;

**158910/2019   DATO, ROSARIO vs. NEW YORK CITY TRANSIT**
**Motion No.  004**

**Page 2 of 15**

(f) L3-4 right foraminal disc herniation extending into and narrowing the right L3-4 neural foramen confirmed by MRI performed November 10, 2018;

(g) Bulging discs at L4-5 and L5-S1 confirmed by MRI performed November 10, 2018;

(h) The foregoing lumbar injuries caused plaintiff to undergo a series of three caudal epidural steroid injections performed by Germain Rowe, M.D. at Metropolitan Surgical Institute;

(i) As a result of the causally related lumbar injuries, plaintiff will need to undergo lumbar surgery in the form of laminectomy, discectomy and/or fusion;

(j) Major depressive disorder, single episode, without psychotic features;

(k) Anxiety;

(l) Pain disorder with related psychological factors"

(*id*. ¶ 14). To summarize, plaintiff allegedly suffered injuries to his right shoulder, left knee, lumbar spine, and psychological injuries.

In addition, plaintiff asserts that he "has been incapacitated from the date of the accident to the present and continuing" and, as such, is "claiming lost earnings of $2,500 per week plus benefits, including pension, annuity, vacation and health funds, from the date of the accident until plaintiff is able to return to work or until the end of his work life expectancy" (*id*. ¶ 17). At the time of plaintiff's accident he was a member Bricklayers & Trowel Trades International Union (*id*.).

## DISCUSSION

### I.   Verde's Request to Stay the Filing of the Note of Issue

On this motion, Verde first seeks a "protective order staying the filing of the Note of Issue and Certificate of Readiness until all discovery is completed" (affirmation in support of motion [NYSCEF Doc. No. 120] ¶ 2).

First, a protective order regulates or limits the use of a disclosure device (*see* CPLR 3103 [a]), and filing the note of issue is not a discovery device. Second, a stay against a party from filing of the note of issue until discovery is complete (essentially, an injunction) is unnecessary, as an adequate remedy already exists. If the note of issue is filed before discovery is complete, an aggrieved party may timely move to vacate the

note of issue, pursuant to 22 NYCRR 202.21 (e) (*see Sky Coverage Inc. v Alwex Inc.*, 202 AD3d 454 [1st Dept 2022]).

Given the formal mechanisms that are already in place for when a note of issue is filed prematurely, this court declines Verde's invitation to improvise another mechanism. The court notes that Supreme Court, New York County has not implemented a certification conference, i.e., a conference for the parties to certify that discovery is complete before they can be permitted to file the note of issue.

Thus, this branch of Verde's motion is denied.

## II. Verde's Request to Extend Time the discovery end date and deadline of March 19, 2024 to July 19, 2024 to permit time to complete discovery

This branch of Verde's motion was rendered academic by the stipulation June 6, 2024, which extended the time to complete discovery and plaintiff's deadline to file the note of issue (*see* NYSCEF Doc. No. 174).

## III. Verde's Request to Compel Plaintiff to Provide Discovery

CPLR 3101 states that there "shall be full disclosure of all matter material and necessary in the prosecution or defense of an action." "[M]aterial and necessary" are "to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity" (*Allen v Crowell-Collier Pub. Co.*, 21 NY2d 403, 406 [1968]). "[T]he acid test for disclosure of information is not whether the party can make out a prima facie case without the evidence, but whether he or she can make out a more persuasive case with it" (6 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 3101.08 [2024]).

"It is incumbent on the party seeking disclosure to demonstrate that the method of discovery sought will result in the disclosure of relevant evidence or is reasonably calculated to lead to the discovery of information bearing on the claims" (*Vyas v Campbell*, 4 AD3d 417, 418 [2d Dept 2004]; *see also Twenty Four Hour Fuel Oil Corp. v Hunter Ambulance*, 226 AD2d 175-176 [1st Dept 1996]). However, "[u]nder our discovery statutes and case law, competing interests must always be balanced; the need for discovery must be weighed against any special burden to be borne by the opposing party" (*Kavanagh v Ogden Allied Maintenance Corp.*, 92 NY2d 952, 954 [1998] [quotation marks and citation omitted]).

On this motion, Verde essentially moves to compel plaintiff to provide disclosure purportedly related to his medical condition before and after his accident, and also to provide disclosure purportedly to his claim for lost wages. In opposition, plaintiff argues that the disclosure sought by Verde is overly broad and unduly burdensome, namely in that the disclosure sought does not relate to the specific injuries at issue in this action.

**158910/2019   DATO, ROSARIO vs. NEW YORK CITY TRANSIT**
**Motion No. 004**

**Page 4 of 15**

4 of 15

[* 4]

Preliminarily, this court notes that there does not appear to be any dispute that Verde sought the discovery at issue on this motion through various demands during this litigation and that plaintiff timely interposed objections. It appears that Verde distilled what it believed was the discovery that remained "outstanding" from plaintiff in a March 5, 2024 good faith letter (Verde's exhibit S in support of motion [NYSCEF Doc. No. 140], Good Faith Letter).

According to Verde, on March 7, 2024, plaintiff responded to the March 5, 2024 good faith letter by agreeing to proceed with a medical examination by Dr. John Olsewski and by providing "the non-privileged social security disability file maintained by his counsel and some Aron authorizations" (affirmation in support of motion [NYSCEF Doc. No. 120] ¶ 22). However, Verde contends that this motion was necessary because plaintiff has otherwise maintained his objections to providing the various categories of discovery discussed below.

## A. Trial Authorizations with Box 9a Completed

On this motion, Verde asserts that plaintiff has "improperly objected to providing Trial Authorizations with box 9a completed, which pertains to Alcohol/Drug treatment, mental health information and HIV status" (affirmation in support of motion ¶ 30).

### 1. HIV Records

"Where pertinent, Public Health Law § 2785(2)(a) gives a court discretion to grant an application for the disclosure of confidential HIV-related information upon a showing of 'a compelling need for disclosure of the information for the adjudication of a criminal or civil proceeding'" (*Del Terzo v Hosp. for Special Surgery*, 95 AD3d 551, 552 [1st Dept 2012]). "Further, in demonstrating a compelling need, the requesting party must, as a threshold matter, establish that the subject of the requested records actually has or had HIV or AIDS" (*Rahman v Pollari*, 107 AD3d 452, 455 [1st Dept 2013]).

Here, Verde contends that it is "entitled to records concerning HIV status given that he claims the need for future medical care and lost earnings (past and future) and HIV status affects an individual's work life expectancy and pain and suffering" (affirmation in support of motion ¶ 32).

However, this argument was soundly rejected in *Del Terzo*, where the defendants there contended that they were entitled to such HIV-related information "because plaintiff has placed her life expectancy in controversy" (95 AD3d at 552).

Therefore, given the above, and because Verde has not put forward any evidence that plaintiff actually has HIV or AIDS, Verde is not entitled to any HIV-related information concerning plaintiff.

**158910/2019   DATO, ROSARIO vs. NEW YORK CITY TRANSIT**
**Motion No.  004**

Page 5 of 15

5 of 15

## 2. Mental Health and Substance Abuse Records

Under section 22.05 and section 33.13 of the Mental Hygiene Law, substance abuse program records and mental health records "shall not be released except 'upon a finding by the court that the interests of justice significantly outweigh the need for confidentiality'" (*Del Terzo*, 95 AD3d at 553, quoting Mental Hygiene Law § 33.13).[1]

Here, Verde argues that "[g]iven that Plaintiff alleges psychological injuries for which he received treatment, Defendants are entitled to all and any mental health information that Plaintiff has received from all and any mental health providers. Mental health treatment may impact Plaintiff's work life expectancy" (affirmation in support of motion ¶ 31).

It is true that plaintiff has alleged the following psychological conditions: "Major depressive disorder, single episode, without psychotic features", anxiety and "Pain disorder with related psychological factors" (bill of particulars ¶ 14). However, Verde here does not limit its request simply to authorizations for such psychological conditions. Rather, Verde is seeking "all and any mental health information that Plaintiff has received from all and any mental health providers" and on the theory that it might affect plaintiff's work life expectancy (affirmation in support of motion ¶ 31). Quite simply, plaintiff's limited allegations regarding psychological injuries "did not place [his] entire mental health into contention" (*DiMaggio v Port Auth. of New York and New Jersey*, 228 AD3d 426, 427 [1st Dept 2024]; *see also Duran v E. 185th St. Realty Corp.*, 217 NYS3d 558 [1st Dept 2024] ["Plaintiff's generalized allegations of depression, anxiety, fear, emotional harm, and curtailment of her daily life activities stemming from her accident did not place her entire mental health history at issue"]).

Therefore, Verde has not established that the "interests of justice significantly outweigh the need for confidentiality" here, so Verde's request for plaintiff's mental health and substance abuse records is denied (*see Del Terzo*, 95 AD3d at 553 [holding that the "interests of justice standard" was not met when the defendants sought such records "on the basis of nothing more than a generalized assertion that substance abuse and mental illness can affect a person's level of stress, ability to work and life expectancy"]).

## B. Authorizations for Plaintiff's Social Media Accounts

In Verde's good faith letter, Verde stated that it was seeking "Authorizations to obtain full access to and copies of plaintiff's current and historical social media accounts including, but not limited to, Facebook and Instagram, the period of one year prior to the date of loss to present" (good faith letter at 3 of 4). In response to the good faith letter, plaintiff directed defendant to his response to Verde's post deposition demands, dated June 15, 2022, wherein plaintiff objected to this demand (Verde's exhibit T [NYSCEF

---

[1] "Mental Hygiene Law § 22.05 provides that the records of a person who receives chemical dependence services shall be released only in accordance with Mental Hygiene Law § 33.13" (*Del Terzo*, 95 AD3d at 553).

**158910/2019   DATO, ROSARIO vs. NEW YORK CITY TRANSIT**                              **Page 6 of 15**
**Motion No.  004**

6 of 15

Doc. No. 140], plaintiff's good faith response at 3 of 6; *see also* Verde's Exhibit L [NYSCEF Doc. No. 133] ¶ 11).

In *Forman v Henkin*, the Court of Appeals held that the discovery of a party's social media information was subject to the "material and necessary" standard under CPLR 3101 (a), and further added:

"That being said, we agree with other courts that have rejected the notion that commencement of a personal injury action renders a party's entire Facebook account automatically discoverable. *Directing disclosure of a party's entire Facebook account is comparable to ordering discovery of every photograph or communication that party shared with any person on any topic prior to or since the incident giving rise to litigation—such an order would be likely to yield far more nonrelevant than relevant information.* Even under our broad disclosure paradigm, litigants are protected from unnecessarily onerous application of the discovery statutes" (30 NY3d 656, 664-65 [2018] [internal quotation marks and citations omitted and emphasis added]).

Here, Verde has attempted to place some temporal limit on its discovery of plaintiff's social media information—i.e. limiting the disclosure to one-year before the date of loss. However, Verde's demand is overbroad because it failed to identify "the types of materials that must be disclosed while avoiding disclosure of nonrelevant materials" (*id.* at 666).

"The burden of serving a proper demand is upon counsel, and it is not for the courts to correct a palpably bad one. Thus, the appropriate remedy for an overbroad discovery demand is to vacate the entire demand rather than to prune it" (*Star Auto Sales of Queens, LLC v Filardo*, 216 AD3d 839, 840 [2d Dept 2023] [internal quotation marks and emendation omitted]). This rule seems particularly appropriate in this case, given that Verde has clearly sought the overbroad disclosure of plaintiff's substance abuse, mental health, and HIV records while utterly failing to make anything close to an appropriate showing of entitlement.

Therefore, this court exercises its discretion to deny Verde's request to compel plaintiff to execute social media authorizations (*see Sereda v A.J. Richard & Sons, Inc.*, 219 AD3d 1458, 1458-59 [2d Dept 2023] [affirming lower court "denying those branches of the defendants' motion which sought authorizations to obtain records from the plaintiff's Facebook and other social media accounts beginning two years before the date of the accident"]).

## C. Authorizations for Medical Records Related to ISO Report

On this motion, Verde requests that the court direct plaintiff to provide authorizations "for Plaintiff's prior work-related accidents dated January 24, 2018, April 26, 2014, May 25, 2005 and the motor vehicle accidents dated November 22, 2016,

**158910/2019   DATO, ROSARIO vs. NEW YORK CITY TRANSIT**
**Motion No.  004**

**Page 7 of 15**

7 of 15

August 6, 2011, September 9, 2008, March 31, 2008, and October 27, 2003"
(affirmation in support of motion ¶ 23). There does not appear to be any dispute that
plaintiff timely objected to providing these authorizations when Verde first sought them
pursuant to a December 17, 2020 demand (*id.*; *see also* plaintiff's good faith response
at 2 of 6 [stating that "plaintiff previously responded to this demand"]).

According to Verde, it is seeking such authorizations based on an "ISO report
regarding Plaintiff's prior accidents" that it shared with plaintiff via email on March 14,
2024 (affirmation in support of motion ¶ 24; plaintiff's exhibit U in support of motion
[NYSCEF Doc. No. 142], email attaching ISO report). Verde argues that plaintiff was
asked about the underlying claims for losses associated with the above dates, and
plaintiff testified that he could not recall the events relating to those dates.

In addition to arguing that the ISO Report amounts to inadmissible hearsay, in
opposing this portion of the motion, plaintiff has specifically argued why each of the
alleged accidents are not relevant to this action.

### 1. January 24, 2018 Alleged Date of Loss

Plaintiff argues that he did not waive his doctor-patient privilege for any treatment
he received as a result of the January 24, 2018 accident because, according to the ISO
report itself, "plaintiff s accident of January 24, 2018 involved a laceration injury to the
plaintiff's left thumb, which is not an injury site that is claimed in the subject litigation
arising out of the plaintiff's October 13, 2018 accident" (affirmation in opposition
[NYSCEF Doc. No. 147] at 9 of 32). Plaintiff further notes that the ISO report does not
suggest that plaintiff sustained any "psychological or psychiatric conditions" as a result
of this accident (*id.*).

In reply, Verde does not specifically address plaintiff's arguments.

As a general rule, "plaintiffs are not required to provide unlimited authorizations
for medical records, but only for those relating to the parts of the body that have been
affirmatively placed in controversy" (*DiMaggio*, 228 AD3d at 427). Here, as plaintiff
points out, plaintiff's left thumb—which was purportedly injured in the January 24, 2018
accident according to the ISO report—has not been placed in controversy in this action.
Further, Verde has failed to offer "proper expert evidence establishing a particularized
need for the inquiry into matters not directly at issue in this action" (*Lindsay v CG
Maiden Member, LLC*, 211 AD3d 638, 638 [1st Dept 2022]). Likewise, Verde's
"generalized claims" (*Hunlock v New York City Tr. Auth.*, 194 AD3d 522, 523 [1st Dept
2021]) that discovery into this injury "may indicate that his pre-existing conditions would
have reduced his work life expectancy or that he would have required surgery
regardless of whether the accident occurred" (affirmation in support of motion ¶ 26) are
insufficient to justify disregarding plaintiff's doctor-patient privilege here.

Therefore, Verde's request to compel plaintiff to execute an authorization related
to the alleged January 24, 2018 date of loss in the ISO report is denied.

**158910/2019 DATO, ROSARIO vs. NEW YORK CITY TRANSIT**
**Motion No. 004**

**Page 8 of 15**

## 2. November 22, 2016 Alleged Date of Loss

In opposing this branch, plaintiff argues that "even if the facts of the purported ISO are true," defendants are not entitled to authorizations for the above alleged date of loss because "the claim recorded to be allegedly made by Rosario Dato was [ ] property damage to an automobile" (affirmation in opposition to motion at 10 of 32).

In reply, Verde does not specifically address plaintiff's arguments.

The court agrees that there is no showing that compelling plaintiff to provide an authorization related to the November 22, 2016 alleged date of loss "will result in the disclosure of relevant evidence or is reasonably calculated to lead to the discovery of information bearing on the claims" (*State Farm Mut. Auto. Ins. Co. v RLC Med., P.C.*, 150 AD3d 1034, 1035 [2d Dept 2017]).

Therefore, Verde's request to compel plaintiff to execute an authorization related to the alleged November 22, 2016 date of loss in the ISO report is denied.

## 3. August 6, 2011 Alleged Date of Loss

Similar to November 22, 2016 alleged date of loss, plaintiff points out that Verde's request to compel plaintiff to execute an authorization related to the August 6, 2011 alleged date of loss should be denied because the ISO report itself only "records a claim for property damage to an automobile which was allegedly made by Rosario Dato" (affirmation in opposition to motion at 10).

In reply, Verde does not specifically address plaintiff's arguments.

Therefore, Verde's request to compel plaintiff to execute an authorization related to the alleged August 6, 2011 date of loss in the ISO report is denied, as there is no showing that it will result in the disclosure of relevant evidence or is reasonably calculated to lead to the discovery of information bearing on the claims" (*State Farm Mut. Auto. Ins. Co.*, 150 AD3d at 1035).

## 4. September 9, 2008 Alleged Date of Loss

Similar to the above, plaintiff points out that that the September 9, 2008 alleged date of loss relates only to a claim for property damage to a 2004 Land Rover LR3 and that the only claim for personal injury appears to relate to an "involved party" named Daniela A. Spatola.

In reply, Verde does not specifically address plaintiff's arguments.

Therefore, Verde's request to compel plaintiff to execute an authorization related to the alleged September 9, 2008 date of loss in the ISO report is denied (*State Farm Mut. Auto. Ins. Co.*, 150 AD3d at 1035).

**158910/2019   DATO, ROSARIO vs. NEW YORK CITY TRANSIT**
**Motion No.  004**

**Page 9 of 15**

9 of 15

[* 9]

## 5. March 31, 2008 Alleged Date of Loss

Similar to the above, plaintiff points out that that the September 9, 2008 alleged date of loss relates only to a claim for property damage to a 2006 Hyundai Tucson.

In reply, Verde does not specifically address plaintiff's arguments.

Therefore, Verde's request to compel plaintiff to execute an authorization related to the alleged March 31, 2008 date of loss in the ISO report is denied (*State Farm Mut. Auto. Ins. Co.*, 150 AD3d at 1035).

## 6. May 25, 2005 Alleged Date of Loss

Here, as plaintiff points out, the ISO report itself lists the "damage/injury" as being to plaintiff's "thumb left pinky" (affirmation in opposition at 13; ISO report at 14-15).

In reply, Verde does not specifically address plaintiff's arguments.

Thus, because the alleged injury is to a different body part than those body parts placed at issue in this action, and because Verde has failed to offer "proper expert evidence establishing a particularized need for the inquiry into matters not directly at issue in this action" (*Lindsay*, 211 AD3d at 638), Verde's request to compel plaintiff to execute an authorization related to the alleged May 25, 2005 date of loss in the ISO report is denied.

## 7. October 27, 2003 Alleged Date of Loss

As plaintiff points out, the ISO report itself lists the "damage/injury" as being to personal property, which plaintiff states was his jacket that "ripped after it became caught in a fixture while he was shopping at a Pathmark grocery store on October 27, 2003" (affirmation in opposition at 14; ISO report at 15-16).

In reply, Verde does not specifically address plaintiff's arguments.

Therefore, Verde's request to compel plaintiff to execute an authorization related to the alleged March 31, 2008 date of loss in the ISO report is denied (*State Farm Mut. Auto. Ins. Co.*, 150 AD3d at 1035).

## 8. December 30, 2000 Alleged Date of Loss

In opposing defendant's request to compel plaintiff to execute an authorization for the December 30, 2000 date of loss, plaintiff points out that the ISO report does not list the body parts that were allegedly injured in this apparent automobile accident and plaintiff cannot remember being involved in this accident, "making it impossible for the defendant to establish whether the plaintiff sustained injuries to the same body parts

**158910/2019   DATO, ROSARIO vs. NEW YORK CITY TRANSIT**                    **Page 10 of 15**
**Motion No.  004**

10 of 15

and/or body systems on December 30, 2020 that he injured in the subject accident of October 13, 2018" (affirmation in opposition at 15-16; ISO report at 17-18).

In addition, plaintiff argues that after having conducted a search for the name(s) of the physician listed in the ISO report, "there was no listing for Dr. Joseph Kleyneman and there was no listing for Iosif L. Kleyneman", and, "based upon information and belief, Dr Kleyneman is now deceased" (affirmation in opposition at 16). Finally, plaintiff argues that given how long ago this accident occurred "there can be no reasonable expectation that discovery of this accident will lead to admissible evidence" (*id.* at 17).

In reply, Verde argues that the lack of clarity as to whether plaintiff injured the same body parts militates in favor of plaintiff executing an authorization. In addition, Verde argues that plaintiff "speculat[ing]" that Dr. Kleyneman is deceased "is an improper basis for an objection" and that plaintiff should "at least let the Defendants try to obtain the records" (affirmation in reply ¶ 8).

The court exercises its discretion to deny Verde's request to compel an authorization related to his December 30, 2000 date of loss. Given that the subject accident and the December 30, 2000 date of loss are separated by almost 18 years and that the ISO report itself only states a general claim for "Bodily Injury Auto Related," the court finds that Verde has failed to establish that these records are material and necessary to its defense of the action (*see Abdur-Rahman v Pollari*, 107 AD3d 452, 454 [1st Dept 2013] ["[P]laintiff is entitled to some reasonable restriction on the scope of the records. Defendants have made no showing why 10 years of records are material and necessary to the defense of this action. A limitation in scope to records preceding decedent's death by five years is far more reasonable under the circumstances"]).

### 9. April 26, 1994 Alleged Date of Loss

As plaintiff points out, the ISO report itself indicates that April 26, 1994 date of loss involved "right hand cut tools" and that said accident occurred more than two decades before the underlying accident (affirmation in opposition at 17; ISO report at 20-21).

In reply, Verde does not specifically address plaintiff's arguments.

Therefore, Verde's request to compel plaintiff to execute an authorization related to the alleged March 31, 2008 date of loss in the ISO report is denied.[2]

### D. Authorization for Primary Care Physician

In support of this branch of the motion, Verde argues that "Plaintiff's primary care physician records are necessary to the defense of this action as they will allow

_____

[2] The court notes that both Verde and plaintiff appear to mistakenly refer to this date of loss as occurring on April 26, 2014, a year which does not appear at all in the ISO Report (*see e.g.* affirmation in support of motion ¶ 23; affirmation in opposition at 17).

**158910/2019   DATO, ROSARIO vs. NEW YORK CITY TRANSIT**          **Page 11 of 15**
**Motion No.  004**

Defendants to determine what other conditions may adversely affect his health and earning abilities" (affirmation in support of motion ¶ 27).

In opposition, plaintiff argues that such discovery is not warranted because he has "has not waived his doctor/patient privilege with respect to his primary care physician" (affirmation in opposition at 28).

In reply, Verde argues that it is "entitled to know what other medical conditions are affected and allegedly continue to affect Plaintiff's ability to work. The primary care records will inform the defendants of Plaintiff's life work expectancy" (affirmation in reply ¶ 11).

Such a "bare-bones assertion" by Verde is insufficient to justify compelling plaintiff to provide an authorization for his primary care physician where Verde has "not shown that the records they seek are related to the claimed injuries" (*Gumbs v Flushing Town Ctr. III, L.P.*, 114 AD3d 573, 574 [1st Dept 2014]; *see also Lafata v Verizon Communications Inc.*, 180 AD3d 575, 576 [1st Dept 2020] ["Defendants failed to adduce any evidence showing that plaintiff sought treatment from his primary care physician or the named providers for the body parts that plaintiff alleges were injured in the subject accident"]).

Therefore, this branch of Verde's motion is denied.

### E. Verde's Demand for *Arons* Authorizations

In *Arons v Jutkowitz* (9 NY3d 393 [2007]), "the Court of Appeals permitted informal interviews of an adverse party's treating physician, provided that a valid authorization has been provided, and that the attorney makes clear that 'any discussion with counsel is entirely voluntary and limited in scope to the particular medical condition at issue'" (*Rucinski v More Restoration Co. Inc.*, 147 AD3d 485, 486 [1st Dept 2017], quoting *Arons*, 9 NY3d at 410).

On this motion, Verde contends that it served plaintiff with "Combined Demands demanding *Arons* authorizations for Plaintiff's treating physicians as a result of the alleged occurrence, Trial Authorizations and authorizations to obtain records for any prior injuries unrestricted by date and *Arons* authorizations" (affirmation in support of motion ¶ 8), referencing a document attached as exhibit G, titled "Combined Discovery Demands" and dated February 26, 2020 (NYSCEF Doc. No. 128).

In opposition, plaintiff responds that "Verde is not entitled to an order directing plaintiff to provide *Arons* authorizations because Verde admits that plaintiff supplied *Arons* authorizations and Verde fails to specify which provider is allegedly outstanding" (affirmation in opposition at 3).

In reply, Verde argues that it has "not conceded in that it received *Arons* authorizations," and lists 11 doctors for which Verde claims are plaintiff's treating

**158910/2019  DATO, ROSARIO vs. NEW YORK CITY TRANSIT**
**Motion No.  004**

Page 12 of 15

12 of 15

physicians and for whom "Plaintiff improperly objects and fails to provide *Arons* authorizations for" (affirmation in reply ¶¶ 5-6).

Here, the court finds that Verde has failed to establish that the *Arons* authorizations sought are for physicians who treated plaintiff for conditions or body parts "related to the claimed injuries" (*Gumbs*, 114 AD3d at 573-74).

Neither Verde's moving affirmation nor exhibit G state the names of the treating physicians that Verde was seeking to compel *Arons* authorizations for. Thus, neither plaintiff nor the court could determine whether the *Arons* authorizations related to treatment for a body part or system placed in issue.

Even if the court were to overlook that Verde improperly provided the names of the physicians for which it seeks *Arons* authorizations for the first time in reply—which the court will not do (*Jain v New York City Tr. Auth.*, 27 AD3d 273, 273 [1st Dept 2006] ["The court's consideration of these claims, raised for the first time in reply, was an improvident exercise of discretion"])—the court is still clueless as to whether those named physicians treated plaintiff for the body parts, systems, or conditions placed in issue in this action (*Arons*, 9 NY3d at 410 [holding that interviews of plaintiff's treating physicians must be "limited in scope to the particular medical condition at issue in the litigation"]).

Therefore, this branch of Verde's motion is also denied.

**F. Plaintiff's Tax Returns for 2015, 2016, 2020 - 2023**

"While New York has a broad policy of discovery, favoring disclosure, disclosure of tax returns is disfavored because of their confidential and private nature, requiring the party seeking to compel production to make a strong showing of necessity and demonstrate that the information contained in the returns is unavailable from other sources" (*Weingarten v Braun*, 158 AD3d 519, 519-20 [1st Dept 2018] [internal quotation marks omitted]).

In moving for this disclosure, Verde asserts that plaintiff has already "provided authorizations to obtain Plaintiff's tax returns for the years 2017 through 2019," but objects to providing additional tax returns (affirmation in support of motion ¶ 28). Verde further contends that such tax returns "are necessary for the defense of his earnings claims" (*id.*)

In opposition, plaintiff argues that he opposes providing Verde these additional returns because Verde's demands are "overbroad, cumbersome and not reasonably limited in time and not reasonably limited in scope" (affirmation in opposition at 20-21). Plaintiff further objects to providing the returns because:

158910/2019   DATO, ROSARIO vs. NEW YORK CITY TRANSIT                    Page 13 of 15
Motion No.  004

13 of 15

"Defendant already has access to the plaintiff's complete earnings history because the plaintiff has exchanged authorizations for the plaintiff's union records with the Bricklayers & Towels Trade Union to permit defendant to inspect plaintiff's union wage and attendance records, as well as authorizations to the Social Security Administration" (*id*. at 21-22, citing plaintiff's exhibit 5 in opposition [NYSCEF Doc. No. 152], Plaintiff's Exchange of Authorizations as to the Demand of Defendant Verde Electric Corp.).

In reply, Verde argues that plaintiff's employment "authorizations will not lead to information regarding other sources of income" (affirmation in reply ¶ 13).

The court finds that Verde has not made a strong showing of necessity and demonstrated that the information is unavailable from other sources. Plaintiff is not self-employed. Additionally, the "sources of income" that would be relevant to plaintiff's claim for lost earnings would be income derived from plaintiff's work. To allow Verde to take a peek at plaintiff's tax returns to see if there were any income derived from work that was not disclosed through other means would effectively create an exception that entirely swallows the rule of confidentiality. Second, Verde has not submitted an affirmation from an economist or relevant expert that a larger time span is necessary to determine plaintiff's lost earnings with reasonable certainty.

Therefore, this branch of Verde's motion is denied.

### G. Authorization for Plaintiff's Employment Records from Tile Industry Fund

In opposing this motion, plaintiff, points to its exhibit 13 (affirmation in opposition ¶ 13), which is a letter, dated March 14, 2024, wherein plaintiff enclosed an "updated authorization to Tile Industry Fund, c/o Daniel H. Cook Associates, 253 West 35th Street,12th flr. New York, New York 10001, to inspect plaintiff's work history, pension fund, health and welfare records" (plaintiff's exhibit 13 [NYSCEF Doc. No. 160], March 14, 2024 letter enclosing updated authorization for Tile Industry Fund).

In reply, Verde does not specifically dispute that such an updated authorization for the Tile Industry Fund was provided or otherwise make any specific argument as to the updated authorization.

Therefore, this branch of Verde's motion is denied.

### H. Plaintiff's Out-of-Pocket Expenses

In Verde's moving papers, Verde asserts that plaintiff "objected" to providing "[p]roof of out-of-pocket expenses by Plaintiff in connection with his medical treatment or subsequent care" (affirmation in support of motion ¶ 13).

**158910/2019   DATO, ROSARIO vs. NEW YORK CITY TRANSIT**                    Page 14 of 15
**Motion No.  004**

However, in plaintiff's opposition papers, plaintiff clarifies that "Verde does not have a good faith basis to demand proof of plaintiff's out of pocket expenses with respect to his medical treatment or subsequent care because this office has already advised Verde that plaintiff is not in possession of any such proof" (affirmation in opposition at 25).

In reply, Verde does specifically dispute this argument.

Therefore, this branch of Verde's motion is denied.

### I.   Medical Examination by Dr. John Olsewski

In response to Verde's good faith letter stating that a medical examination of plaintiff by Dr. John Olsewski is outstanding, plaintiff responded that "[a]s per Defendant's IME designation, defendant is to give Plaintiff the date and time of the IME exam" (Verde's exhibit T [NYSCEF Doc. No. 141], plaintiff's response letter of March 7, 2024).

Further, in its opposition papers, plaintiff stated that "the IME by Dr. Olsewski" is the one portion of Verde's motion that plaintiff does not oppose (affirmation in opposition at 28-29).

Therefore, this court will direct plaintiff to appear for a medical examination by Dr. John Olsewski upon receiving appropriate notice of the time and place of such examination.

### CONCLUSION

Upon the foregoing documents and following a motion conference in this matter on June 6, 2024, it is hereby **ORDERED** that the discovery motion by defendant Verde Electric Corp. (Verde) is **GRANTED TO THE EXTENT** that plaintiff is directed to appear for a medical examination by Dr. John Olsewski upon receiving appropriate notice of the time and place of such examination, and the motion is otherwise denied.

This constitutes the decision and order of the court.

20241030123127RTSAI4C15CCE96C59411DBB412FE62EDECB98

_____
**10/30/2024**
**DATE**

_____
**RICHARD TSAI, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

158910/2019   DATO, ROSARIO vs. NEW YORK CITY TRANSIT
Motion No.  004

Page 15 of 15

15 of 15